UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
───────────────────────────────

UNITED STATES OF AMERICA,

    -against-

TYRONE KING,

              *Defendant*.

00-CR-1108 (RJD)

NOT FOR ELECTRONIC
OR PRINT PUBLICATION

**MEMORANDUM & ORDER**

DEARIE, United States District Judge:

    Defendant Tyrone King moves pursuant to Section 404 of the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (2018), for a reduction in the life sentence that I imposed on June 16, 2006. For the reasons set forth below, I grant the motion and reduce King's sentence to a term of incarceration of 30 years.

## BACKGROUND

    Because the facts of this case have been set forth in numerous decisions and are not in dispute here, I assume familiarity and summarize them only briefly. Following a trial in November 2002, a jury found King guilty of the following offenses stemming from his involvement with a violent gang that sold crack cocaine: Count One: Racketeering, in violation of 18 U.S.C. §§ 1962(c), 1963; Count Two: Racketeering conspiracy, in violation of 18 U.S.C. §§ 1962(c), 1962(d), 1963; Count Twelve: Conspiracy to murder in aid of racketeering activity, in violation of 18 U.S.C. § 1959(a)(5); Counts Fourteen and Fifteen: Assault with a dangerous weapon in aid of racketeering activity, in violation of 18 U.S.C. § 1959(a)(3); Count Seventeen: Conspiracy to distribute and possess with intent to distribute 50 grams or more of cocaine base, in violation of 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(A); Count Eighteen: Use of a minor in

furtherance of narcotics distribution, in violation of 21 U.S.C. § 861(a)(1), (b); Count Nineteen: Using or carrying a firearm for a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i); and Count Twenty-One: Felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2).[1]

On September 10, 2004, I sentenced King to life imprisonment. ECF No. 254. King appealed and the Second Circuit remanded for resentencing pursuant to *Booker v. United States*, 543 U.S. 220 (2005). *See United States v. King*, 171 F. App'x 922 (2d Cir. 2006). On June 16, 2006, I sentenced King to the following: For Counts Seventeen and Eighteen, life imprisonment; for Counts Twelve and Twenty-One, concurrent terms of 120 months; for Counts One, Two, Fourteen, and Fifteen, concurrent terms of 240 months; and for Count Nineteen, a consecutive term of 5 years. ECF No. 289. The Second Circuit affirmed this sentence on appeal, and King's petitions for collateral review and a reduced sentence were unsuccessful. *United States v. King*, 266 F. App'x 23 (2d Cir. 2008); *King v. United States*, 2013 WL 530834 (E.D.N.Y. Feb. 13, 2013); *United States v. King*, 2019 WL 1128763 (E.D.N.Y. Mar. 12, 2019), *aff'd*, 813 F. App'x 690 (2d Cir. 2020).

King filed a *pro se* motion for a reduced sentence under the First Step Act on October 28, 2019. ECF No. 391. The government opposed, and King filed a *pro se* reply. ECF Nos. 395, 398. On May 12, 2023, the Federal Defenders requested leave to file a brief in support of King's motion for a reduced sentence, and I granted that motion. ECF No. 443; Docket Entry Dated May 15, 2023. King filed that counseled brief on August 10, 2023. ECF No. 445. The government did not respond.

---

[1] The jury also convicted King of two additional counts, but those convictions were vacated on appeal. *See United States v. King*, 171 F. App'x 922 (2d Cir. 2006).

2

King's counseled brief, supported by dozens of letters in support from prison staff and other inmates, details his substantial efforts toward rehabilitation. Since I first sentenced King in 2004, he has not received any disciplinary marks. ECF No. 445-13, Ex. M at 3, 6. King has taken on leadership roles in prison, working as the head orderly for his housing unit, as a member of USP Lewisberg's suicide watch companion team, and as part of the cadre workforce at USP Lewisburg—the latter a role that prison staff explain is reserved for "only the inmates with the best work ethic" who are "responsible." ECF No. 445-13, Ex. M at 2; ECF No. 445-4, Ex. D at 1-2; ECF No. 445-6, Ex. F at 16. King has become certified to drive an electric pallet jack and to work as a flagger. ECF No. 445-12, Ex. L at 24-25. After earning his GED, he took forty education classes, totaling over eighteen hundred hours of class time. ECF No. 445-12, Ex. L at 4; ECF No. 445-13, Ex. M at 7. King has completed anger management training, drug education modules, a cognitive-behavioral treatment program, and a sixty-eight-hour reentry program. ECF No. 445-6, Ex. F. at 2; ECF No. 445-13, Ex. M at 7. And he has come to be recognized by prison staff and fellow inmates alike as a mentor to newer inmates. ECF No. 445-5, Ex. E at 1-2, 5, 7, 17; ECF No. 445-6, Ex. F at 4-5; ECF No. 445-8, Ex. H at 1; ECF No. 445-9, Ex. I at 1; ECF No. 445-13, Ex. M at 4.

## LEGAL STANDARD

The Fair Sentencing Act of 2010 amended language in 21 U.S.C. § 841(b)(1)(A) to increase the amount of cocaine base, or crack cocaine, that could trigger a life sentence from 50 grams to 280 grams. Pub. L. 111-220, 124 Stat. 2372, 2372 (2010) (codified at 21 U.S.C. § 841(b)(1)(A)(iii)). The First Step Act of 2018 in turn made this change retroactive by authorizing district courts to "impose a reduced sentence as if . . . the Fair Sentencing Act of 2010 . . . were in effect at the time the covered offense was committed." Pub. L. No. 115-391,

§ 404(b), 132 Stat. at 5222. This was done in response to a consensus that penalties for offenses involving crack cocaine were excessively harsh compared to those for offenses involving powder cocaine, and that the preexisting sentencing regime disproportionately affected Black defendants. *See Dorsey v. United States*, 567 U.S. 260, 268-69 (2012); *United States v. Burwell*, No. 97 CR 998-1 (RJD), 2020 WL 5014783, at *3 (E.D.N.Y. Aug. 25, 2020).

A district court considering a motion for a reduced sentence under the First Step Act "must conduct a two-part inquiry," determining first "whether the defendant is eligible for a reduction" and second "whether, and to what extent, to exercise its discretion to reduce the sentence." *United States v. Moore*, 975 F.3d 84, 89 (2d Cir. 2020). A defendant is eligible for a reduction if he was sentenced for a "covered offense," if he has not previously had his sentenced reduced in accordance with the Fair Sentencing Act's amendments, and if no previous motion under the First Step Act has been denied. *Id.*; Pub. L. No. 115-391, § 404(a), (c). The term "covered offense" encompasses "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act." *Id.* "[I]t is the statute under which a defendant was convicted, not the defendant's actual conduct, that determines whether a defendant was sentenced for a 'covered offense' within the meaning of Section 404(a)." *United States v. Davis*, 961 F.3d 181, 187 (2d Cir. 2020). The First Step Act "prescribes no procedure" for assessing whether to exercise discretion in reducing an eligible defendant's sentence, but a district court's inquiry must be guided by "sound legal principles." *United States v. Moyhernandez*, 5 F.4th 195, 205 (2d Cir. 2021), *vacated on other grounds*, 142 S. Ct. 2899 (2022). These can include the factors found in 18 U.S.C. § 3553(a). *Id.*

4

## DISCUSSION

### I. Eligibility

King seeks resentencing on both counts for which I imposed a life sentence: Count Seventeen, conspiracy to distribute and possess with intent to distribute cocaine base in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A); and Count Eighteen, use of a minor in furtherance of narcotics distribution, in violation of 21 U.S.C. § 861(a)(1) and (b). I conclude that he is eligible for resentencing: I have not previously reduced his sentence on either count in accordance with the Fair Sentencing Act's amendments; I have not previously denied a motion under Section 404 after a complete review on the merits;[2] and, as explained below, both counts constitute "covered offenses." *See* Pub. L. No. 115-391, § 404(a), (c).

#### A. Count Seventeen

The Fair Sentencing Act modified the statutory penalties for 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846. Most relevantly, it "altered the drug-quantity thresholds for the imposition of penalties in 21 U.S.C. § 841(b)(1)(A)(iii)," raising the minimum quantity for a lifetime sentence from 50 grams to 280 grams. *United States v. Holloway*, 956 F.3d 660, 664 (2d Cir. 2020). The statutes in Count Seventeen are all dependent on that subsection for their penalties: Section 841(a) makes it unlawful to distribute or possess cocaine base with intent to distribute; Section 846 makes it unlawful to conspire to commit such offenses; and Section 841(b)(1)(A), as noted, prescribes penalties for such offenses. The statutory penalties were therefore modified for this offense.

---

[2] I have previously denied King's motions to reduce or vacate his sentence pursuant to 18 U.S.C. § 3582(c)(2) and Rule 60(b)(6), respectively. *See* Memorandum and Order Dated March 12, 2019, ECF No. 382. Neither motion raised arguments under Section 404 of the First Step Act.

The existence of evidence indicating that King conspired to distribute far more than 280 grams of crack cocaine does not alter this conclusion. *See* PSR ¶¶ 38, 97 (stating that King's offense involved a conservatively estimated 7.8 kilograms of cocaine base). As the Second Circuit held in *Davis*, "it is the statute under which a defendant was convicted, not the defendant's actual conduct, that determines whether a defendant was sentenced for a 'covered offense.'" 961 F.3d at 187. There, the court held that the defendant was sentenced for a "covered offense" where he pleaded guilty to conspiring to distribute and possess with intent to distribute at least 50 grams of cocaine base, even though his plea agreement conceded that his conduct had involved far more of the substance. *Id.* at 182-84, 191. So too here. For the same reason, the government cannot prevail on its argument that King is ineligible for relief on this count because his life sentence was based violent conduct for which he bore some responsibility, including the death of Ronald Mitchell. *See* Govt's Opp'n to Def.'s Pro Se Mot. for Resentencing at 4, ECF No. 395. *Davis* makes clear that it is the statute of conviction, not any underlying conduct, that is dispositive in this inquiry.

### B. Count Eighteen

The Fair Sentencing Act also modified the penalties for 21 U.S.C. § 861. This statute makes it unlawful to use a minor in furtherance of "any offense in this subchapter" and provides that any person who does so "is subject to twice the maximum punishment otherwise authorized and at least twice any term of supervised release otherwise authorized for a first offense." 21 U.S.C. § 861(a)(1), (b). The sentence for a violation of this statute is therefore dependent on the maximum punishment authorized by the underlying offense—here, violation of 21 U.S.C. § 841. *See United States v. Leonard*, 827 F. App'x 993, 996 (11th Cir. 2020); *United States v. Mason*, No. 97-CR-88-2, 2020 WL 5046951, at *2 (N.D. Ind. Aug. 26, 2020), *aff'd,* 855 F. App'x 298

(7th Cir. 2021); *United States v. Wyche*, No. 89-CR-36-5, 2023 WL 130825, at *4 (D.D.C. Jan. 9, 2023). Unlike in *United States v. Fletcher*, 997 F.3d 95 (2d Cir. 2021), where the Second Circuit held that drug-related murder in violation of 21 U.S.C. § 848(e)(1)(A) is not a "covered offense" because it independently establishes a penalty range, here, Section 861's penalty range is entirely dictated by that of the underlying drug offense. *See id.* at 97.

The government contends that King is not eligible for resentencing on Count Eighteen because there was evidence that he distributed more than 50 grams of crack cocaine, but this argument is unpersuasive. *See* Govt's Opp'n to Def.'s Pro Se Mot. for Resentencing at 4-5, ECF No. 395. As discussed above, it is the statute of conviction, not the underlying conduct, that dictates whether a defendant is eligible for resentencing—and here, the relevant statute of conviction determined its penalties by reference to the provision covering 50 grams. *See Davis*, 961 F.3d at 187.

## II. Discretionary Reduction

Even if a defendant is eligible for a sentencing reduction pursuant to the First Step Act, the decision whether to grant that relief is discretionary. *Holloway*, 956 F.3d at 662-63. I am not required to consider the 18 U.S.C. § 3553(a) factors in making that decision, but they remain "sound guiding principles" that district courts can regularly consider in weighing whether and to what extent to reduce a defendant's sentence. *Moyhernandez*, 5 F.4th at 203. Those factors are:

> (1) [T]he nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed—
>     (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>     (B) to afford adequate deterrence to criminal conduct;
>     (C) to protect the public from further crimes of the defendant; and
>     (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

7

>(3) the kinds of sentences available;
>(4) the kinds of sentence and the sentencing range established [by the Sentencing Guidelines];
>(5) any pertinent [Sentencing Commission] policy statement[;]
>(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

As an initial matter, the third, fourth, fifth, and sixth factors weigh in favor of granting relief, given that the sentencing scheme to which similarly situated defendants are subject today would not mandate or even suggest a life sentence. (Indeed, conspiracy to distribute and possess with intent to distribute more than 50 grams of crack cocaine would today expose a defendant to at most 40 years' imprisonment. 21 U.S.C. § 841(b)(iii).) A reduction of King's sentence would nonetheless provide just punishment for the offenses for which he was convicted: To date, King has served 23 years in prison—a sentence exceeded by only one codefendant, who, unlike King, was additionally convicted of murder. *See* Def.'s Counseled Br. in Support of Mot. for Resentencing at 13-14. Similarly situated defendants sentenced today receive, on average, sentences of 25 years. *See id.* at 14 (citing U.S. Sentencing Comm'n, *Judiciary Sentencing Information*, https://jsin.ussc.gov/analytics/saw.dll?Dashboard. King's post-sentencing record, discussed below, suggests that there is little need to incapacitate him from further crimes; a reduction in his sentence from a life sentence to a term of years, meanwhile, would still provide ample deterrence to others who might commit similar offenses. Even if released today, King would have spent over two decades of his life in prison—no minor punishment.

Safety and security of the community are paramount considerations in any sentencing decision, and this is no less the case in an application for sentencing reduction. I do not believe that the mere passage of time adequately addresses my concerns about King and his criminal

8

activities. That said, although King's crimes and their seriousness have not changed in the time since his conviction, he has presented a remarkable record of the rehabilitation during his time in prison. As detailed above, he has maintained a clean record since I sentenced him in 2004—an unusual feat for an individual with no reason to believe he will ever be released from prison. Indeed, prison staff have been struck by King's good behavior, noting the rarity of an inmate with such a sentence not receiving any incident reports and describing it as "remarkable" ECF No. 445-6, Ex. F. at 18; ECF No. 445-8, Ex. H at 3. Prison staff describe King as "discipline[d]," "determine[ed]," "responsible," "respectful," "hard-working," "conscientious," and an "effective communicator." ECF No. 445-6, Ex. F. They also note King's apparent remorse for his past actions: he "states he regrets every day how immature he was," and "has always been open and honest about his mistakes . . . and has seemed to have learned from it"; "King owns his mistakes," "has learned," "and now possesses the tools he needs."  ECF No. 445-6, Ex. F at 5, 11, 13. These tools include the employment certifications discussed above, as well as coursework in anger management, health and wellness, financial management, resume skills, and effective communication. ECF No. 445-13, Ex. M. at 2. King has maintained steady employment within the prison, working as head orderly for his housing unit and as part of the selective cadre workforce. *Id.*; ECF No. 445-6, Ex. F at 16. He appears well prepared to reenter society, having gained employable skills and, as the letters from his children reflect, having maintained strong family ties—so much so that he plans to live with his family upon release. *See* ECF No. 445-10, Ex. J; Def.'s Mot. for Compassionate Release at 15, ECF No. 425.

When I sentenced King to life imprisonment, I described him as "a man among boys, an adult whose intangible leadership qualities led to the destruction of the . . . lives of the young men in his community." *King v. United States*, No. 09-CV-4533 (RJD), 2013 WL 530834, at *2

9

(E.D.N.Y. Feb. 13, 2013) (cleaned up). In his more than two decades in prison, King appears to have discovered how to use those leadership qualities for good, and how to lead younger men on a path toward rehabilitation. Indeed, prison staff extoll King's leadership skills, characterizing him as "someone [they] could approach if [they] ever needed assistance" who "tries to influence and mentor younger inmates" and "help them reform." ECF No. 445-6, Ex. F. King's fellow inmates echo this sentiment: In their own words, King "has help[ed] transform so many people from a negative to a positive way of living" and "le[d] [them] towards a better path," operating as "a pillar in [the] unit and throughout the prison." ECF No. 445-5, Ex. E.

King is, by all accounts, a changed man. That the government has not contested any of King's asserted accomplishments is certainly noteworthy.

Finally, I note that King's submission on this motion includes a letter in which he apologizes to the family of the individual whose death resulted from his actions, the young men whom he influenced to pursue similar criminal activity, and his children and family. ECF No. 445-11 at 3. King describes reckoning with the version of himself described at trial and sentencing—a "champion of wanton violence" and "a man having no regard for justice or for other [people's] feelings, rights, or safety . . . . [I]nhumane." *Id.* at 2. Rather than resign himself to being such an individual, King writes, he was "inspired . . . to stop making . . . decisions that cost [him his] life." *Id.* He now describes himself as "transformed" and extends his "deepest condolences" to those he harmed through his "stupidity an[d] past indiscretions." *Id.* at 3. He asks for the ability to "enjoy some period of time out of jail," *id.* at 2, and I am persuaded that he has earned that opportunity.

There are no guarantees, and I do not come to this decision lightly. Yet I am of the view that if rehabilitation is to be a true goal of our criminal justice system, then clear evidence of

10

rehabilitation such as that presented by King must be recognized to ensure the integrity of that system. Here, that evidence has convinced me that King's rehabilitation is genuine and his expressions of remorse are sincere. Based on the facts of this case, the remedial purpose of Section 404, and the Section 3553(a) factors, I conclude that the appropriate sentence in this case is a term of 30 years plus a 10-year term of supervised release including the conditions of release set forth in the amended judgment entered July 21, 2006. The probation department is directed to, in consultation with counsel, impose a release plan and recommend any conditions of supervised release.

## CONCLUSION

For the foregoing reasons, defendant Tyrone King's motion under the First Step Act for a reduction in sentence (ECF Nos. 391, 445) is GRANTED. His term of imprisonment is hereby reduced from life to 30 years. The 10-year term of supervised release including the conditions of release specified in the amended judgment entered July 21, 2006 shall remain in full force and effect.[3]

---

[3] King has also filed a *pro se* motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). ECF No. 425. It is unclear whether King maintains this motion, given that his counseled brief addresses only his motion for a sentencing reduction pursuant to Section 404 of the First Step Act. *See generally* ECF No. 445. To the extent that King is still pursuing compassionate release, however, I grant his motion.

As an initial matter, neither the risk of contracting COVID-19 in prison nor King's mere choice to go to trial rather than to accept a plea agreement constitute extraordinary compelling reasons warranting compassionate release. *See* Govt.'s Opp'n to Def.'s Mot. for Compassionate Release at 7, ECF No. 427 (noting that King has refused a COVID-19 vaccine); *United States v. Robinson*, No. 17-CR-611-7 (AT), 2021 WL 1565663, at *3 (S.D.N.Y. Apr. 21, 2021) (denying compassionate release where a defendant's "refusal to take a vaccine that has been shown to be effective at preventing COVID-19, and that will help protect him from getting sick or severely ill should he be infected, undercuts his fear of infection" (cleaned up)); *United States v. Clausen*, No. 00-CR-291-2, 2020 WL 4260795, at *7 (E.D. Pa. July 24, 2020) (noting the lack of authority recognizing the decision to go to trial as an extraordinary and compelling circumstance).

That said, the disparity between King's sentence and that which he would have received today,

11

SO ORDERED.

/s/
Raymond J. Dearie
United States District Judge

Dated:        November 8, 2023
              Brooklyn, New York

---

coupled with the remarkable rehabilitation discussed above, constitute extraordinary and compelling reasons warranting compassionate release. *See United States v. Gigliotti*, No. 15 CR 204 (RJD), 2023 WL 5522105, at *2 (E.D.N.Y. Aug. 18, 2023) (interpreting that the Second Circuit's "full slate" standard, announced in *United States v. Brooker*, 976 F.3d 228 (2d Cir. 2020), to permit district courts to consider non-retroactive changes in the law for compassionate release purposes); *Clausen*, 2020 WL 4260795, at *8 (granting compassionate release due to the combination of the defendant's rehabilitation and the significant disparity between the sentence imposed and that which the defendant would have received had he been sentenced at the time the court granted compassionate release); *United States v. Quinn*, 467 F. Supp. 3d 824, 829 (N.D. Cal. 2020) (collecting "numerous" decisions granting compassionate release due to an "enormous sentencing disparity created by subsequent changes to federal sentencing law"). And as discussed with regards to King's Section 404 motion, the Section 3553(a) factors weigh in favor of reducing King's time in prison.

King's motion for compassionate release is therefore also GRANTED, and his sentence of imprisonment is modified as set forth above.